Ray E. Gallo (State Bar No. 158903)
Patrick V. Chesney (State Bar No. 267587)
GALLO & ASSOCIATES
1101 Fifth Avenue, Suite 205
San Rafael, CA 94901
Telephone:    415.397.1205
Facsimile:    310.338.1119
rgallo@gallo-law.com
pchesney@gallo-law.com

Attorneys for Defendants
First in Awareness, LLC, Williams, and Harvey

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN ROTH,<br><br>  Plaintiff,<br>           vs.<br><br>FIRST IN AWARENESS, LLC, a Connecticut Limited Liability Corporation; JERRY S. WILLIAMS, individually and as Managing Member of First in Awareness, LLC, a Connecticut Limited Liability Corporation, MELANIE WOOD-HARVEY, and DOES 1 through 50, inclusive,<br><br>  Defendants. | CASE NO. 3:11-cv-01452-EDL<br><br>Magistrate Judge Elizabeth Laporte<br><br>DEFENDANTS' ANSWER TO COMPLAINT |

Defendants FIRST IN AWARENESS, LLC ("First in Awareness" or "FIA"), JERRY S. WILLIAMS ("Williams"), and MELANIE HARVEY ("Harvey") (erroneously sued as "Melanie Wood-Harvey") (collectively, "Defendants"), by and through their counsel of record herein, hereby respond to the complaint of Steven Roth ("Plaintiff") in this action and admit, deny, and allege as follows:

1. Defendants lack information or belief sufficient to determine Plaintiff's county of residence and, on that basis, deny all the allegations of paragraph 1 of the complaint in this action ("Complaint"). (All paragraph references in this Answer refer to paragraphs in the Complaint unless otherwise indicated.)

2. Defendants admit the allegations of paragraph 2 of the Complaint.

3. Defendants admit that Williams currently resides in the State of Arizona, that Williams formerly resided in the State of Connecticut, that Williams is the only managing member of First in Awareness, and that—after Plaintiff solicited Williams to sell him securities—Williams agreed to sell and sold Plaintiff securities. Defendants deny all remaining allegations of paragraph 3.

4. Defendants admit that Harvey currently resides in the State of Arizona but deny all the remaining allegations of paragraph 4.

5. Defendants deny all the allegations of paragraph 5, deny that Plaintiff was damaged in any way, or at all, deny that any of the fictitiously named defendants exist, and deny that any wrongful acts were committed by anyone, or at all.

6. Defendants admit that Williams was the sole managing member of First in Awareness and that First in Awareness hired Harvey as an independent contractor to handle papers, receive answer incoming calls, and perform other office duties. They deny all remaining allegations of paragraph 6.

7. Defendants admit that Williams was the sole managing member of First in Awareness but deny all remaining allegations of paragraph 7.

8. Defendants admit that Williams was the sole managing member of First in Awareness but deny all remaining allegations of paragraph 8.

9. Defendants admit that Williams was the sole managing member of First in Awareness but deny all remaining allegations of paragraph 9.

10. Defendants admit that Plaintiff contacted Williams (through a web page devoted to the stock market) regarding Plaintiff's interest in participating with Williams in a "float lock down" (a type of organized investment strategy) of the shares of Cascadia Investments, Inc. ("CDIV"), that Williams responded by calling Plaintiff, and that at Plaintiff's request Williams agreed to sell Plaintiff 1,000,000 shares of CDIV stock from a single share certificate that Williams held for a much larger number of shares. Defendants deny all remaining allegations of paragraph 10.

11. Answering paragraph 11 of the Complaint, Defendants admit that Plaintiff solicited Williams to sell to Plaintiff and Williams agreed to sell to Plaintiff 1,000,000 shares of Luxshmi Investments, Inc. ("LUXI") stock at $0.30 per share. Defendants also admit that the agreed sale price of the LUXI stock was $300,000. One term and condition of that transaction was that delivery of those shares would not occur until after the CDIV stock float lock down was completed. Williams specifically so informed Plaintiff at the time the agreement was reached. Plaintiff indicated to Williams that Plaintiff understood this. This term was consistent with the purpose of Plaintiff's purchase of the LUXI shares. Plaintiff told Williams that Plaintiff wanted the LUXI shares so he could participate in a planned float lock down involving a group of investors holding LUXI stock. This float lock down was scheduled to occur after the float lock down involving the CDIV shares. Plaintiff did not, in any way or at any relevant time, notify Defendants, or any of them, that he wanted the shares before the agreed upon delivery time. Defendants deny all remaining allegations of paragraph 11.

12. Defendants admit Plaintiff paid the agreed $300,000 for the LUXI shares on or about April 5, 2010 but deny the remaining allegations of paragraph 12.

13. Defendants admit that after Plaintiff solicited Williams to sell Plaintiff CDIV shares, Plaintiff and Williams entered into an agreement whereby Williams agreed to sell 1,000,000 shares of CDIV stock to Plaintiff at $0.30 per share but deny the remaining allegations of paragraph 13.

14. Defendants admit that, on or about April 15, 2010, Plaintiff contacted Harvey with instructions on how to deliver the shares of CDIV and LUXI stock to Plaintiff. Defendants deny all remaining allegations of paragraph 14.

15. Defendants admit that Plaintiff paid the agreed $300,000 for the CDIV shares on or about April 16, 2010. Defendants deny all the remaining allegations of paragraph 15.

16. Answering paragraph 16, Defendants admit that, performing on his contract with Plaintiff to sell Plaintiff stock, Williams tendered his own (larger) CDIV share certificate to CDIV's transfer agent and instructed CDIV's transfer agent to issue a certificate for a portion of those shares, specifically 1,000,000 shares of CDIV stock, to Plaintiff and that Plaintiff contacted Williams seeking assistance with dealing with CDIV's transfer agent. Defendants deny that Williams did not provide assistance to Plaintiff regarding how to deal with the transfer agent. Williams immediately responded to Plaintiff's request and directed Plaintiff to the company's lawyers so that Plaintiff could obtain a proper legal opinion confirming that Plaintiff had the right to sell his CDIV shares, that there were no restrictions on those shares, and that Plaintiff had full ownership of those shares. (Defendants had and have no control over how quickly any company's transfer agent issues a stock certificate after being asked to do so.) Defendants deny the remainder of paragraph 16.

17. Answering paragraph 17, Defendants admit that Plaintiff contacted Defendants on or about September 8, 2010 but deny the remaining allegations of paragraph 17. Plaintiff never requested a refund and Plaintiff at all relevant times understood that the LUXI stock would not be delivered until after the CDIV stock float lock down was completed. On or about September 10, 2010, Williams returned Plaintiff's call. In the course of that call, Plaintiff explained that he had tax problems and needed money to pay his taxes. Plaintiff did not request a refund of the $300,000 he paid for the LUXI shares. Plaintiff instead explained that he still wanted to purchase the LUXI shares and inquired whether Williams would lend Plaintiff money to cover Plaintiff's tax payment. Williams agreed to make the loan to Plaintiff. Plaintiff asked how much time Williams would need to put the loan together and Williams told Plaintiff he would need just a few days. After this conversation, Plaintiff never followed up with Williams.

1. 18. Defendants incorporate paragraphs 1 through 17 above as though repeated here.
2. 19. Defendants deny all the allegations of paragraph 19.
3. 20. Defendants deny all the allegations of paragraph 20.
4. 21. Defendants deny all the allegations of paragraph 21 and further deny that Plaintiff has been damaged in any sum, or at all.
5. 22. Defendants deny all the allegations of paragraph 22 and further deny that Plaintiff has been damaged in any sum, or at all.
6. 23. Defendants deny all the allegations of paragraph 23.
7. 24. Defendants deny all the allegations of paragraph 24 and further deny that Plaintiff has been damaged in any sum, or at all.
8. 25. Defendants incorporate paragraphs 1 through 24 above as though repeated here.
9. 26. Defendants admit that, after Plaintiff solicited Williams, Plaintiff agreed to purchase and Williams agreed to sell the CDIV stock and the LUXI stock but deny the remaining allegations of paragraph 26.
10. 27. Answering paragraph 27, Defendants admit that Williams was the sole managing member of First in Awareness but deny that ever held himself out as a stockbroker, and that any Defendant ever had any relationship to Plaintiff but an arms-length one. Williams specifically disclaimed to Plaintiff any broker license or status. Before the transactions at issue Plaintiff sent Plaintiff's own employee to one a stock trading class that Williams taught. When Plaintiff paid for that class Plaintiff received, read, and accepted a disclaimer and waiver from Williams that stated that Williams was not a broker and only provided technical instruction on investment strategies. Also, at the class, Plaintiff's employee received, read, and accepted that same disclaimer and waiver. Defendants deny all remaining allegations of paragraph 27.
11. 28. Defendants deny all the allegations of paragraph 28.
12. 29. Defendants deny all the allegations of paragraph 29.
13. 30. Defendants deny all the allegations of paragraph 30.
14. 31. Defendants deny all the allegations of paragraph 31.
15. 32. Defendants deny all the allegations of paragraph 32.

| | |
|---|---|
| 1 | 33. Defendants deny all the allegations of paragraph 33 and further deny that Plaintiff has been damaged in any sum, or at all. |
| 3 | 34. Defendants deny all the allegations of paragraph 34 and further deny that Plaintiff has been damaged in any sum, or at all. |
| 5 | 35. Defendants incorporate paragraphs 1 through 34 above as though repeated here. |
| 6 | 36. Defendants admit that Williams was the sole managing member of First in Awareness but deny all the remaining allegations of paragraph 36. |
| 8 | 37. Defendants deny all the allegations of paragraph 37. |
| 9 | 38. Defendants deny all the allegations of paragraph 38 and further deny that Plaintiff has been damaged in any sum, or at all. |
| 11 | 39. Defendants deny all the allegations of paragraph 39 and further deny that Plaintiff has been damaged in any sum, or at all. |
| 13 | 40. Defendants incorporate paragraphs 1 through 39 above as though repeated here. |
| 14 | 41. Defendants deny all the allegations of paragraph 41. |
| 15 | 42. Defendants deny all the allegations of paragraph 42. |
| 16 | 43. Defendants admit that Williams intended to benefit from the sale of the LUXI stocks and CDIV stocks.  Defendants deny all remaining allegations of paragraph 43. |
| 18 | 44. Defendants deny the allegations of paragraph 44. |
| 19 | 45. Defendants deny the allegations of paragraph 45 and further deny that Plaintiff has been damaged in any sum, or at all. |
| 21 | 46. Defendants deny the allegations of paragraph 46 and further deny that Plaintiff has been damaged in any sum, or at all. |

**AFFIRMATIVE DEFENSES**

Defendants assert the following affirmative defenses:

**FIRST AFFIRMATIVE DEFENSE – LACK OF PERSONAL JURISDICTION**

**(By All Defendants and as to All Causes of Action)**

47. Defendants incorporate paragraphs 1 through 46 above as though repeated here.

48. This Court lacks personal jurisdiction over Defendants, and each of them.  No

defendant resides in California, no defendant was served in California, and no defendant has consented to be sued in California.

49. Additionally, all Defendants lack the minimum contacts with California sufficient to impose jurisdiction. Defendants First in Awareness and Williams' only contact with California is through two classes taught by Williams in Los Angeles, California, one in December 2009 and one in January 2010. At these classes, Williams taught technical analysis for stock charting and did not advise attendees to purchase any particular stocks. He specifically did not advise the purchase of the CDIV or LUXI stocks at issue here. And, neither Plaintiff nor any person associated with Plaintiff attended these classes. These classes are unrelated to this litigation, which involves two contracts for the sale and delivery of specific stocks directly between two individual investors, each of which was entered into after Plaintiff solicited Williams to sell shares of stock to Plaintiff that Plaintiff had learned Williams held. Because Defendants' contacts with California are insignificant and are not related to the allegedly wrongful conduct, and because Defendants do not conduct continuous and systematic business within California, asserting personal jurisdiction would violate Defendants' due process rights.

50. Even if California courts had personal jurisdiction over First in Awareness and Williams, or either of them, this Court lacks personal jurisdiction over Harvey. Harvey's sole relationship to the at-issue transactions is that she performed receptionist and other clerical duties for the other defendants. Harvey did not negotiate the terms of the sale and was not a party to it, nor did Harvey perform any services beyond traditional receptionist duties, such as answering and returning phone calls, and processing mail. Up to and including the time Plaintiff filed the Complaint, Harvey had never been physically present within the State of California. She has visited California only one time, for a few days, to attend a wedding, in or about March 2011. These contacts are insufficient to establish personal jurisdiction.

**SECOND AFFIRMATIVE DEFENSE – FAILURE TO ARBITRATE**

**(By All Defendants and as to All Causes of Action)**

51. Defendants incorporate paragraphs 1 through 50 above as though repeated here.

52. If this Court determines that the requirements of personal jurisdiction are satisfied

1  based on Williams' contacts with California through Williams' classes then Plaintiff's claims are
2  barred based on Plaintiff's failure to arbitrate according to the terms of a binding agreement
3  between Plaintiff and Williams that was entered into when Plaintiff contracted for his employee to
4  attend Williams's class.

5       53.     Long before Plaintiff called Williams and asked Williams to sell Plaintiff stock,
6  Plaintiff paid for one of his employees to attend a class taught by Williams in Indianapolis,
7  Indiana.

8       54.     Plaintiff registered and paid for his employee's class online.  In the course of
9  paying for the class online, Plaintiff read and agreed to the terms of a document captioned
10 "RELEASE OF LIABILITY, INDEMNITY, AND HOLD HARMLESS AGREEMENT" (the
11 "Online Waiver"). The Online Waiver included a clause requiring that any dispute arising out of
12 or in any way related to the Online Waiver must be arbitrated in Maricopa County, Arizona.

13      55.     Therefore, if personal jurisdiction may be asserted against Defendants based on any
14 connection between the subject matter of Williams's classes and the allegations in the Complaint,
15 then Plaintiff is barred by the terms of the Online Waiver from pursuing Plaintiff's claims outside
16 arbitration.

**THIRD AFFIRMATIVE DEFENSE – IMPROPER VENUE**

**(By All Defendants and as to All Causes of Action)**

19      56.     Defendants incorporate paragraphs 1 through 55 above as though repeated here.

20      57.     This Court is not a proper venue under 28 U.S.C. § 1391(a).  No defendant resides
21 in California, nor did a substantial part of the events or omissions on which Plaintiff's claims are
22 based occur within California (Plaintiff reached out to Williams, a resident of Arizona).
23 Additionally, as explained in paragraphs 47 through 50 above, personal jurisdiction cannot be
24 established against Defendants, or any of them, within the Northern District of California.

25      58.     Because no grounds for venue under 28 U.S.C. § 1391(a) exist, Plaintiff's claims
26 cannot proceed in this Court.

**FOURTH AFFIRMATIVE DEFENSE – ECONOMIC LOSS RULE**

**(By All Defendants and as to All Causes of Action)**

59. Defendants incorporate paragraphs 1 through 58 above as though repeated here.

60. Plaintiff entered into two contracts with Williams.  First, Plaintiff contracted with Williams to receive a specific number of shares of CDIV stock at a specific price.  Next, Plaintiff contracted with Williams to receive a specific number of shares of LUXI stock at a specific price.  Even if Plaintiff's allegations were true, they all arise from these contracts.   And, all of Plaintiff's alleged losses are purely economic.

61. Essentially, Plaintiff alleges that Defendants did not perform on these contracts in that he failed to deliver securities—but Plaintiff failed to assert a claim for breach of contract and instead asserted claims seeking tort damages.  Even Plaintiff's first cause of action for "Rescission and Restitution" is nothing more than a thinly concealed tort claim.  In that cause of action, in paragraph 24 of the Complaint, Plaintiff alleges that Williams and First in Awareness committed some unidentified fraud and requests punitive damages.  Because none of the allegations are independent from the contracts at issue Plaintiff's tort claims are barred by the economic loss rule.

**FIFTH AFFIRMATIVE DEFENSE – WAIVER**

**(By All Defendants and as to All Causes of Action)**

62. Defendants incorporate paragraphs 1 through 61 above as though repeated here.

63. Plaintiff, on at least two separate occasions, waived his right to complain about the lack of adequate disclosures, the sales of the stocks at issue, or the inherent risks involved in securities trading.

64. Long before Plaintiff asked Williams to sell Plaintiff the CDIV and LUXI shares at issue, Plaintiff wanted to learn about participating in "float lock downs," the trading strategy advocated and taught by Williams.

65. To that end, Plaintiff sent one of his employees to Indianapolis, Indiana, to attend one of the classes taught by Williams.

66. Additionally, when Plaintiff paid for the class online, he read and agreed to the Online Waiver.  The Online Waiver included an "Acknowledgment of Risks" that explained:

   a. that Williams "is not a stock broker or financial advisor";

   b. that Williams "does not promote any recommendation to buy or sell stock";

      c.   that Williams is only teaching "his methodology of trading, purchasing, and holding stocks," as opposed to advising the purchase of particular stocks;

      d.   that trading stocks—and especially penny stocks [like CDIV and LUXI]—is inherently risky; and

      e.   that the attendee "agrees to assume complete and full responsibility for the outcome of all trading decisions made, including, but not limited to, loss of capital."

67. Additionally, when Plaintiff reviewed and accepted the Online Waiver, Plaintiff expressly agreed to waive any and all claims Plaintiff had against Defendants arising from or relating to Plaintiff's participation in any stock trading activities or the classes themselves.

68. At the Indianapolis class, Plaintiff's employee further received and signed a document (the "Seminar Waiver") that contained the same disclosures and release agreements as the Online Waiver.

69. On information and belief, Plaintiff received, read, and understood the disclosures contained in the Seminar Waiver.

70. Finally, when Plaintiff called Williams to solicit Williams's sale to him of CDIV and LUXI stocks, Williams made the following additional oral disclosures (the "Phone Waiver"):

      a.   that Williams was not a stock broker;

      b.   that, based on Plaintiff's representations, Williams understood that Plaintiff wanted to purchase the LUXI and CDIV shares from Williams so he could participate, with a group of investors, in two "float lock downs," one involving the LUXI shares and one involving the CDIV shares;

      c.   that it takes a long time for a transfer agent to break up a certificate (regularly as long as sixty days); and

      d.   that other investors wanted to purchase some of the LUXI shares Williams owned and therefore, for the sake of efficiency, Williams would not send his LUXI certificate to the transfer agent, to be broken up and distributed, until Williams had finalized all related sales at a future and uncertain date.

71. Plaintiff made no indication that he did not understand the disclosures made in the Phone Waiver and, in fact, expressly acknowledged he understood that the LUXI shares he purchased would not be available for a long time.

72. Plaintiff's acknowledgment of these disclosures bars the Complaint.

### SIXTH AFFIRMATIVE DEFENSE – ESTOPPEL
**(By All Defendants and as to All Causes of Action)**

73. Defendants incorporate paragraphs 1 through 72 above as though repeated here.

74. Plaintiff intended for Defendants to rely, and Defendants did rely, upon Plaintiff's acknowledgement of the disclosures and releases in the Online Waiver, the Seminar Waiver, and the Phone Waiver. Therefore, Plaintiff's Complaint is barred by the doctrine of estoppel.

### SEVENTH AFFIRMATIVE DEFENSE – ASSUMPTION OF RISK
**(By All Defendants and as to All Causes of Action)**

75. Defendants incorporate paragraphs 1 through 74 above as though repeated here.

76. Plaintiff received multiple disclosures regarding the nature of the intended transactions, the uncertainty as to the delivery date of the shares at issue, and the inherent risks involved in trading stocks. By proceeding despite receiving the Seminar Waiver, the Online Waiver, and the Phone Waiver, Plaintiff expressly assumed the risks of purchasing the stocks and is thus barred from recovery.

### EIGHTH AFFIRMATIVE DEFENSE – CONTRIBUTORY NEGLIGENCE
**(By All Defendants and as to All Causes of Action)**

77. Defendants incorporate paragraphs 1 through 76 above as though repeated here.

78. Plaintiff's alleged losses derive, in whole or in part, from his own conduct. Plaintiff elected to invest in risky stocks and engage in transactions that would take a significant amount of time to complete. Plaintiff knew, or should have known, that the value of these stocks would fluctuate and that it was possible for the stocks to lose value.

79. Essentially, Plaintiff is trying to pass the risks he incurred to Defendants. Any recovery Plaintiff is entitled to should be offset by the extent to which Plaintiff's own negligence caused his alleged losses.

**NINTH AFFIRMATIVE DEFENSE – NOVATION**

**(By All Defendants and as to the First and Fourth Causes of Action)**

80. Defendants incorporate paragraphs 1 through 79 above as though repeated here.

81. To the extent that Defendants in any way failed to timely transfer the certificates for the CDIV and LUXI shares to Plaintiff, Plaintiff's claim for rescission and restitution fails because Plaintiff already accepted a substitute agreement.

82. As described in paragraph 17 above, on or about September 10, 2010, Williams called Plaintiff, as Plaintiff had requested. Plaintiff explained that he still wanted to purchase the LUXI shares and participate in the planned CDIV and LUXI float lock downs, but that he was having trouble paying his taxes and needed money. Plaintiff never asked for a refund, but instead asked Williams if Williams would lend Plaintiff the money Plaintiff needed.

83. Williams agreed to lend Plaintiff the money he said he needed.

84. The agreement between Williams and Plaintiff, whereby Williams agreed to lend Plaintiff money to cover Plaintiff's tax expenses, constitutes a new agreement that subsumes any breached obligation Defendants had regarding the alleged failure to sooner transfer the CDIV and LUXI shares to Plaintiff. Therefore, Plaintiff's claim for rescission and restitution of the agreements for CDIV and LUXI shares is barred by novation.

**TENTH AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM**

**(By All Defendants and as to All Causes of Action)**

85. Defendants incorporate paragraphs 1 through 84 above as though repeated here.

86. All of Plaintiff's claims allege, in a conclusory fashion, some fraudulent representation(s). (*See, e.g.*, ¶¶ 24, 30, 39, 42.) Beyond vague allusions to misrepresentations, however, Plaintiff fails to plead fraud with the particularity required. Also, California law does not recognize any cause of action for "conspiracy." Plaintiff's Complaint fails in these, and in other and further ways, to state any claim upon which relief may be granted.

**PRAYER FOR RELIEF**

**Defendants therefore pray for the following relief:**

1. Dismissal of the complaint with prejudice;

2. Costs of suit; and

3. Such other and further relief as this Court deems just and proper.

DATED: April 11, 2011                Gallo & Associates


                                     By:  /s/ Patrick V. Chesney
                                          Patrick V. Chesney
                                          Attorneys for Defendants First in Awareness,
                                          LLC, Williams, and Harvey

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.
COUNTY OF MARIN )

I am an attorney at law duly licensed to practice in the state of California. I am over the age of 18 years and not a party to the within action; my business address is 1101 Fifth Avenue, Suite 205, San Rafael, California 94901.

On April 11, 2011, I served the foregoing document:

**ANSWER TO COMPLAINT**

on the interested parties in this action addressed as follows:

| | |
|---|---|
| Terence D. Doyle<br>Virginia L. Ekelund<br>Law Offices of Terence Daniel Doyle<br>571 Hartz Ave.<br>Danville, CA 94526 | |

  \_XX\_\_**By First Class Mail** by enclosing the documents in an envelope and depositing the sealed envelopes with the United States Postal Service with the postage fully prepaid.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on April 11, 2011, at San Rafael, California.

 /s/ Patrick V. Chesney
  Patrick V. Chesney